IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTIN BILLY WILLIS, III,<br><br>　　　　　　　Petitioner,<br><br>　　vs.<br><br>JOE A. LIZARRAGA, Warden, Mule Creek State Prison,[1]<br><br>　　　　　　　Respondent. | No. 2:13-cv-01599-JKS<br><br>MEMORANDUM DECISION |

Austin Billy Willis, III, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Willis is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Mule Creek State Prison. Respondent has answered, and Willis has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying this case:

> On January 17, 2009, at 2:30 a.m., [Willis] got into a fight at a fast food restaurant drive-thru with Alexander C. and Ulises L. Alexander C. and Ulises L. were holding [Willis] and punching him. They punched him in the face and [Willis] fell to the ground. Eventually when the pair let [Willis] up, he went back to his car, reached in to release the hood, stated he had a gun in his car and yelled "I'm going to kill you." Alexander C. and Ulises L. got back in their car and drove away. [Willis] followed them, driving a silver Chevy Impala. Alexander C. tried to evade [Willis], but [Willis] continued following them. Eventually Alexander C. and Ulises L. heard what they later identified as gunshots hitting the car.
> After the shooting, [Willis] stopped following Alexander C. and Ulises L. Alexander C. then realized he had been shot. Ulises L. called 9–1–1 and Alexander C.

---

[1] Joe A. Lizarraga, Warden, Mule Creek State Prison, is substituted for Heidi H. Lackner, former Warden, Sierra Conservation Center. FED. R. CIV. P. 25(c).

was taken by ambulance to the hospital. Alexander C. had sustained a gunshot wound to the abdomen and required surgery to repair his small intestine.

Alexander C. and Ulises L. and witnesses from the fast food restaurant identified [Willis] as the person in the fight at the restaurant. However, Alexander C. and Ulises L. could not identify [Willis] as the shooter. They had not been able to see the driver of the car and they did not see a gun or muzzle flashes. Even so, they recognized the car as the same one [Willis] had been driving at the restaurant.

Sacramento Police Officer Tom Shrum viewed video surveillance taken from the fast food restaurant, and tracked the Impala to a car rental agency. Shrum was informed that [Willis] had picked the car up on January 14, 2009, and the car was scheduled to be returned on Saturday January 17, 2009, at 2:00 p.m. When the manager came back to work on Monday, the car was in the lot. Gunshot residue (GSR) testing found a fairly high concentration of GSR in the car, indicating a weapon had either been discharged within the vehicle near the front headliner or a heavily contaminated article had come in to contact with the headliner. The only person to rent the car after [Willis] and before the GSR testing was done did not own a gun and had not fired one in the car.

Following a jury trial, [Willis] was convicted of two counts of attempted murder (§§ 664/187, subd. (a)), personal discharge of a firearm at an occupied motor vehicle (§§ 246, 12022.53, subd. (d)), and possession of a firearm by a felon (§ 12021, subd. (a)(1)). The enhancement allegations that as to the attempted murder charges [Willis] had personally used and discharged a firearm causing great bodily injury were found true (§ 12022.53, subds.(b)-(d)). In bifurcated proceedings, the court found the prior strike conviction allegation true.

After trial, [Willis] filed a motion pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) complaining that trial counsel was ineffective in that he did not call a particular witness, Ken A.; did not dispute the evidentiary chain regarding the rental vehicle; refused to file various motions, including a motion to suppress evidence and a section 995 motion; did not challenge the photographic line up; did not communicate with [Willis]; failed to hire a specialist; had no strategy for the defense; and, refused to let [Willis] testify.

In response, counsel explained his trial choices. He chose not to call the witness Ken A. because during their investigation of the case, counsel and the defense investigator spoke with several witnesses, including Ken A., and counsel believed Ken A.'s testimony was cumulative to the testimony of the other witnesses. Ken A. was also "semi-hostile" and "not the greatest witness in the world." As to the various motions [Willis] wanted filed, they were not filed as there were no legal grounds to file them. Counsel stated he communicated with [Willis] about the strengths and weaknesses of the case, but [Willis] was frequently unwilling to listen. As to [Willis] not testifying, counsel had advised [Willis] not to testify, as his criminal background and history would have impeached him, and counsel did not believe there was any benefit to him testifying. On the record, the court had advised [Willis] he had the right to testify and [Willis] affirmed his choice not to testify.

> The court denied the *Marsden* motion, finding counsel's representation "was well above what one would expect of a competent attorney. I thought he was able in fact to do an exemplary job in terms of his representation."
>
> [Willis] was then sentenced to an aggregate determinate term of 23 years eight months, plus 50 years to life. [Willis] was ordered to pay $1,000 in restitution fund fines, and various fines and fees were imposed.

*People v. Willis*, No. C065346, 2012 WL 681187, at *1-2 (Cal. Ct. App. Mar. 1, 2012).

Through assigned counsel, Willis appealed his conviction by filing a brief pursuant to *People v. Wende*, 600 P.2d 1071 (Cal. 1979), whereby appointed counsel filed an appellate brief reciting a summary of the proceedings and the facts of the case and requesting the court to independently review the record because counsel had found no arguable legal issues to raise. Willis also submitted a supplemental brief alleging that trial counsel was ineffective for failing to: 1) call Ken A. as a witness at trial; 2) dispute "broken chain of custody;" 3) prepare critical motions; 4) assert the violation of Willis' speedy trial rights; 4) object to faulty identifications and tainted photo lineups; 5) effectively communicate with Willis; and 6) challenge inconsistent statements made by prosecution witnesses. In a reasoned, unpublished opinion issued on March 1, 2012, the Court of Appeal unanimously affirmed the judgment in all respects. *Willis*, 2012 WL 681187, at *4. Willis petitioned for review in the California Supreme Court, which was denied without comment on May 16, 2012.

Willis then filed a *pro se* petition for habeas relief in the Superior Court. In his state habeas petition, he argued that: 1) the prosecution committed misconduct by knowingly eliciting perjured testimony at the preliminary hearing; 2) the evidence presented by the prosecution was insufficient to sustain his convictions; 3) trial counsel was ineffective for a variety of reasons; and 4) he was denied his constitutional right to testify on his own behalf. The Superior Court denied the petition in an unpublished, reasoned opinion issued on May 6, 2014. Willis raised the

3

same claims in habeas petitions in the California Court of Appeals and California Supreme Court, which were both summarily denied on June 5, 2014, and September 17, 2014, respectively.

While his state habeas petitions were pending, Willis timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on July 30, 2013. *See* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Willis argues that: 1) the prosecutor committed misconduct by eliciting inconsistent witness testimony; 2) the evidence presented was legally insufficient to sustain his convictions; 3) trial counsel rendered ineffective assistance; and 4) he was denied his right to testify at trial.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

4

relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

A.  Prosecutorial Misconduct (Ground 1)

Willis first argues, as he did in his state habeas petition summarily denied by the California Supreme Court, that the prosecutor committed misconduct when he "knowingly elicited and used inadmissible perjured testimony." "[T]he [Supreme] Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnotes omitted). The essential elements of such successful claim are that (1) the testimony is false or perjured, (2) the prosecutor knew that the testimony was false or perjured, and (3) the false testimony was material. *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc); *see Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Murtishaw v. Woodford*, 255 F.3d 926, 959 (9th Cir. 2001). Thus, if Willis successfully shows that the prosecutor knowingly elicited perjured testimony material to his case, habeas relief may be warranted.

Although the prosecutor has a duty to refrain from knowingly presenting perjured testimony, *United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir. 2002), the record does not support Willis' contention that the prosecution knowingly introduced the perjured testimony of Alexander C. at the preliminary hearing. The record indicates that, at the hearing, the prosecutor asked Alexander C. how much he had to drink at the nightclub. Alexander C. responded that he had three beers over a three-hour period at the club. When the prosecutor asked if he had any other alcoholic drinks "over the approximately three-hour period," Alexander answered "no." At

6

trial, the parties stipulated that Alexander C.'s blood alcohol content measured .11 when it was tested at the hospital. On direct examination, the following interaction occurred:

> Q: Now, one last thing I want to ask you about. You were told a couple of days ago in a meeting with me that the number of drinks that you claimed to have consumed that night did not match up with your blood alcohol content draw from the hospital.
> Do you remember that conversation?
>
> A: Yes, I do.
>
> Q: Can you explain that why that is?
>
> A: Yes.
>
> Q: Why is that?
>
> A: Um, the al – the amount that I drank at the club was not all the alcohol that I drank that night.
>
> Q: Okay. When did you first start drinking that day?
>
> A: It was earlier. I was with other friends alongside with Ulises at a bowling alley.
>
> Q: Okay. And how much had you had to drink at the bowling alley?
>
> A: If I had to guess, it was probably five, five beers, maybe six beers.
>
> Q: Okay. And why didn't you tell the detective about that?
>
> A: I was asked each time how many drinks I had at the nightclub, and I answered how many drinks I had at the nightclub.
>
> Q: Don't you think he was concerned with how much you had to drink that night as opposed to at the nightclub?
>
> A: Yes.
>
> Q: Did that occur to you?
>
> A: Yes.

> Q: Okay. Did you have some kind of concern about being – driving under the influence or anything like that when you were talking to the detective?
>
> A: Yes, that did cross my mind.
>
> Q: Were you trying to hide the fact that you had – you were above the legal drink legal limit to drive, were you trying to hide that to the detective or from the detective?
>
> A: Um, wouldn't necessarily say I was trying to hide it. I just if – in my mind I was – if I wasn't asked, I was just going to answer what I was – what I was asked, but that was a concern, so.
>
> Q: And you recognize though when you were being interviewed by the detective that he – he was trying, he was investigating somebody for what in his mind was an attempted murder, right?
>
> A: Right.
>
> Q: Somebody tried to kill you that night, right?
>
> A: Yes.
>
> Q: And clearly, you had some – a serious injury. You could have died that night, right?
>
> A: Yes.
>
> Q: So now I'm trying to understand, I'm trying to help this jury understand why you would omit something like that, you know? That you had a lot more to drink than you told him when he's trying to solve a very, very serious crime that happened against – to you. Do you understand my question?
>
> A: I believe so.
>
> Q: Did that occur to you, did you think about that at the time?
>
> A: I guess I just was concerned of – that that would be some factor as far as what I had to drink that night.

The record therefore does not establish that Alexander C.'s testimony at the preliminary trial was false. Although he omitted discussing the drinks he had earlier in the day, it appears that he answered truthfully the prosecutor's limited questions at the preliminary hearing.

Moreover, there is nothing in the record to suggest that the prosecutor was aware of the toxicology report of Alexander C.'s blood alcohol content; there is therefore no support for the contention that the prosecution knew that Alexander C.'s testimony was misleading. Finally, Willis fails to show that the challenged testimony was material because the jury found Willis guilty despite knowing the full extent of Alexander C.'s drinking and that Alexander C. tried to minimize to law enforcement the full amount he drank.

Nor can Willis show that the prosecutor committed misconduct with respect to inconsistent witness testimony. Inconsistencies in witness testimony are insufficient to establish that the prosecution knowingly introduced false testimony, as it is "within the province of the jury to resolve the disputed testimony." *United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir. 2002); *see also United States v. Zuno–Arce*, 44 F.3d 1420, 1423 (9th Cir. 1995). Here, defense counsel effectively highlighted the inconsistencies in the testimony during summation, and it was up to the jury to resolve the disputes. Accordingly, Willis is not entitled to relief on this ground.

B.     Insufficiency of the Evidence (Ground 2)

Willis next contends that the evidence was legally insufficient to sustain his conviction. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see also McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the California court unreasonably applied *Jackson*. In making

this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review. *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005). A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

Here, Willis argues that there was insufficient evidence by pointing to inconsistencies in the testimony and attacking the value of the evidence against him. But Willis misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction. This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. *Schlup*

*v. Delo*, 513 U.S 298, 330 (1995); *Bruce v. Terhune*, 376 F.3d 950, 957-58 (9th Cir. 2004). Moreover, a conviction of guilt may be proved by circumstantial evidence, and a lack of direct evidence does not preclude a conviction on circumstantial evidence. *Jones v. Wood*, 207 F.3d 557, 263 (9th Cir. 2000) ("Although the evidence was almost entirely circumstantial and relatively weak, it was sufficient to support the conviction.").

Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). In this case, viewing the evidence in the light most favorable to the verdict, the witness testimony and evidence of the gunshot residue test were certainly sufficient to support the jury's verdict against Willis. Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Willis bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. The record does not compel the conclusion that no rational trier of fact could have found that Willis was guilty of attempted murder with firearm and great bodily injury enhancements, especially considering the double deference owed under *Jackson* and AEDPA. Willis is therefore not entitled to relief on his legal insufficiency claim.

C.  Ineffective Assistance of Counsel (Ground 3)

Willis additionally argues that trial counsel was ineffective for a variety of reasons.[2] To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v.*

---

[2] In his Petition, Willis appears to argue that appellate counsel was similarly ineffective, but he provides no reasons in support of that contention. To the extent he argues that appellate counsel was ineffective for filing a *Wende* brief on appeal rather than raising specific issues, the Supreme Court has held that a habeas petitioner cannot state a claim for ineffective assistance of appellate counsel merely because his attorney filed a brief pursuant to *Wende*. *See Smith v. Robbins*, 528 U.S. 259, 284 (2000) ("It is enough to say that the *Wende* procedure . . . affords adequate and effective appellate review for criminal indigents. Thus, there was no constitutional violation in this case simply because the *Wende* procedure was used."). In cases with fully briefed appeals and in cases with *Wende* briefs, claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland*. *Id.* at 285. In the *Wende* brief context, the petitioner must first show that counsel was objectively unreasonable in failing to find arguable issues of appeal, *i.e.*, unreasonably failed to discover nonfrivolous issues and failed to file a merits brief raising them. *Id.* Second, the petitioner must demonstrate prejudice, *i.e.*, a reasonable probability that, but for counsel's unreasonable failure to file a merits brief, the petitioner would have prevailed on appeal. *See id.*
 Willis fails to satisfy either prong here because, simply put, there were no meritorious issues that appellate counsel failed to raise. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1434-35 (9th Cir.1989) (appellate counsel's failure to raise a weak issue did not constitute ineffective counsel). The state courts affirmed Willis' conviction and found no meritorious issues. *See Willis*, 2012 WL 681187, at *4 ("an examination of the entire record" revealed "no arguable error that would result in a disposition more favorable to [Willis]").

*United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard.³ *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Willis must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Willis first argues that trial counsel was ineffective for failing to investigate or obtain security footage, but he fails to provide any evidence in support of his claim and does not detail

---

³ *See Brecht v. Abrahamson*, 507 U.S. 619, 639 (1993) (instructing that, where the standard applies, habeas relief is not warranted unless the error "had [a] substantial and injurious effect or influence in determining the jury's verdict").

13

how this other footage would have differed from the footage introduced at trial. This lack of evidentiary support is fatal to his claim. *See Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (petitioner's own self-serving statements insufficient to support claim of ineffective assistance of counsel without corroborating evidence); *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) (mere speculation that evidence might be helpful insufficient to establish ineffective assistance); *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (rejecting claim of ineffective assistance for failure to call witness based upon lack of affidavit from witness regarding substance of testimony). Likewise, he offers no evidence in support of his claim that counsel refused to obtain evidence collected from the gunshot residue test, and this claim also must fail. Similarly, his claims that counsel failed to challenge the admission into evidence of the bullet casings, "witness statements," "expert analysis," and a suggestive photographic identification procedure are too vague to warrant habeas relief.[4] *See Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995) (conclusory allegations unsupported by a statement of specific facts do not warrant habeas relief); *see also Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) ("the petition is expected to state facts that point to a 'real possibility of constitutional error'" (citation omitted)); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

Finally, Willis alleges that counsel was ineffective for not offering Ken A. as a witness and that counsel lied when he stated during the *Marsden* hearing that he believed Ken A.'s

---

[4] To the extent Willis' claims in his Petition re-assert the more detailed ineffective assistance claims he raised in his supplemental brief on direct appeal, the Court of Appeal's decision denying those claims on the merits was both reasonable and fully supported by the record. *See Willis*, 2012 WL 681187, at *2-4.

testimony would have been cumulative and that Ken A. was "semi-hostile" and "not the greatest witness in the world." But the record shows that Ken A.'s proposed testimony that he did not see a gun and did not hear Willis threaten the victims during the altercation at the fast food restaurant was cumulative to the testimony of a prosecution eyewitness who testified to the same effect. Thus, as the Court of Appeal reasonably determined, "[t]he record here reflects the decision was based on counsel's investigation and conclusion that Ken A.'s testimony would have been cumulative." Accordingly, Willis cannot prevail on any argument advanced in support of his ineffective assistance of counsel claim.

D. <u>Denial of Right to Testify (Ground 4)</u>

Finally, Willis claims that he was denied his constitutional right to testify on his own behalf. In support of his claim, Willis states:

> Counsel deliberately deceived petitioner into relinquishing his right to testify at trial when petitioner was told by counsel that if he would agree to not testify in his behalf that counsel would call witness Ken [A.] who could testify as to those facts of the defense version that were not brought in the trial by the prosecution witnesses. Following the conclusion of the presentation of evidence at trial, when petitioner realized that counsel was not going to call witness Ken [A.] for the defense, petitioner complained to the trial court, in which a *Marsden* hearing was held, and counsel told the court that the reason he did not call witness Ken [A.] was because his testimony would be cumulative and hostile.

The right of an accused to testify in his own defense is well established and is a "constitutional right of fundamental dimension." *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993); *see Rock v. Arkansas*, 483 U.S. 44, 51 (1987). The right stems from several provisions of the Constitution, including the Fourteenth Amendment's Due Process Clause, the Sixth Amendment's Compulsory Process Clause, and the Fifth Amendment's privilege against self-incrimination. *Rock*, 483 U.S. at 51-52. The right is personal, and "may only be

15

relinquished by the defendant, and the defendant's relinquishment of the right must be knowing and intentional." *Joelson*, 7 F.3d at 177.

However, while waiver of the right to testify must be knowing and voluntary, it need not be explicit. *See id.* Rather, a defendant is "presumed to assent to his attorney's tactical decision not to have him testify." *Id.* "[W]aiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so." *Id.* A defendant who wishes to reject his attorney's advice and take the stand may do so "by insisting on testifying, speaking to the court, or discharging his lawyer." *Id.* When a defendant remains "silent in the face of his attorney's decision not to call him as a witness," he waives the right to testify. *United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir. 1993).

The record indicates that the following exchange occurred in open court and in Willis' presence:

| | |
|---|---|
| THE COURT: | . . . . I take it at this point Mr. Willis would like to – obviously, with your advice, he decided not to testify. |
| [DEFENSE COUNSEL:] | My advice to him is to not testify. Now that the People have closed, he has indicated to me up to this point that he chooses not to testify. But, of course, this is his decision and solely his decision. |
| THE COURT: | All right. |
| [DEFENSE COUNSEL:] | Now would be a good time. |
| THE COURT: | Mr. Willis, you understand you have the right to testify, but Mr. Rosenfeld just indicated to me that it's your desire not to testify. |
| [WILLIS:] | Yes, sir. |

> THE COURT: All right. Let's go ahead and bring the jury back in.

Defense counsel then read a stipulation into the record and rested the defense case. The record is therefore clear that Willis did not insist on testifying, and aside from Willis' own statements in his Petition to the contrary, there is no evidence in the record that trial counsel somehow prevented him from either testifying or speaking to the court about his desire to testify. Indeed, the record shows that defense counsel stated in open court that it was Willis' decision alone whether to testify, and that, prior to this exchange, defense counsel clearly stated that he did not intend to call any witnesses.

In any event, Willis cannot show prejudice.[5] Numerous witnesses identified Willis as the man who fought with the two victims in the parking lot. Two witnesses testified that they heard Willis threaten the victims with a gun and then get into his car and drive after the victims. The victims saw Willis' car behind them when the shots were fired, and a gunshot residue test revealed the presence of chemicals produced from firing a gun in Willis' returned rental car. Willis provides no reason to believe that the jury would have found his testimony credible in light of evidence to the contrary, or that his testimony would have led to a different result. And for the same reasons, it cannot be said that trial counsel's advising Willis to refrain from

---

[5] Willis' claim alleges only that his counsel was ineffective for failing to secure his right to testify, which is subject to the prejudice prong of *Strickland.* Willis does not contend that the trial court deprived him of his right to testify. Where a federal criminal defendant is denied his constitutional right to testify, the Ninth Circuit has suggested that such denial constitutes structural error under which error may not be deemed harmless. *See United States v. Gillenwater*, 717 F.3d 1070, 1083 (9th Cir. 2013). Even construing Willis' Petition to raise a claim that he was denied of his constitutional right to testify, Willis cannot prevail because, as discussed above, his silence waived his right to testify. And in any event, Willis' right to testify claim would still fail on *Brecht* harmless error review. *See Parle v. Runnels*, 387 F.3d 1030, 1042-45 (9th Cir. 2004) (applying *Brecht* harmless error test to § 2254 claim that state trial court infringed upon petitioner's right to testify).

testifying, which likely prevented the prosecution from impeaching him with extremely damaging evidence, was an unreasoned tactical decision. Accordingly, because Willis has failed to show that the decision of the California Supreme Court was contrary to clearly established federal law or involved an unreasonable determination of the facts, he is not entitled to relief on this ground.

E.     Request for Appointment of Counsel

Willis also requests the appointment of counsel. While this Court is not unmindful of the plight of unrepresented state prisoners in federal habeas proceedings, there is no constitutional right to counsel in federal habeas proceedings. *See Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (citing *Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991)). Appointment of counsel is not required in a habeas corpus proceeding in the absence of an order granting discovery or an evidentiary hearing. *See* Rules Governing Section 2254 Cases in the U.S. District Courts, Rule 6(a), 8(c). This Court may under the Criminal Justice Act appoint counsel in this case if it determines that the interests of justice so require. 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B); *see Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983) ("In deciding whether to appoint counsel in a habeas proceeding, the district court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved."). Because this case has been fully briefed, and the Court is has now considered and adjudicated it on the merits and determined that no Certificate of Appealability should be granted, this Court does not so determine. Willis' request for counsel must therefore also be denied.

## V. CONCLUSION AND ORDER

Willis is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the request for the appointment of counsel is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: May 25, 2017.

                                                  /s/James K. Singleton, Jr.
                                                  JAMES K. SINGLETON, JR.
                                                  Senior United States District Judge